UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA

       Plaintiff/Respondent,

                               CASE NOS. 2:10-CR-20202 / 2:12-CV-15266

   v.                            2:11-CR-20248 / 2:12-CV-15250

                               2:11-CR-20469 / 2:13-CV-10551

GWENDOLYN WASHINGTON,        JUDGE PAUL D. BORMAN

                               MAGISTRATE JUDGE PAUL J. KOMIVES

       Defendant/Movant.

_____/

**CONSOLIDATED REPORT AND RECOMMENDATION ON DEFENDANT'S
MOTIONS TO VACATE SENTENCE (Case No. 10-20202, docket #181, 193; Case No. 11-
20248, docket #48; and Case No. 11-20469, docket #12)**

I.      RECOMMENDATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
II.     REPORT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
     A.    *Procedural Background* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
          1.    *Case No. 10-20202* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
          2.    *Case Nos. 11-20248 and 11-20469* . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
          3.    *The Pending Motions to Vacate* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
     B.    *Legal Standard* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
     C.    *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
          1.    *Pretrial Investigation* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
          2.    *Advice Regarding Sentencing* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
          3.    *Failure to Obtain Dismissal of Health Care Fraud Charges* . . . . . . . . . . . . . . . . . . . 14
          4.    *Failure to Consult about Appeal* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
     D.    *Recommendation Regarding Certificate of Appealability* . . . . . . . . . . . . . . . . . . . . . . . . . 18
          1.    *Legal Standard* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18
          2.    *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19
     E.    *Conclusion* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20
III.    NOTICE TO PARTIES REGARDING OBJECTIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

\*      \*      \*      \*      \*

I.      RECOMMENDATION: The Court should deny defendant's motions to vacate, set aside, or

correct her sentence pursuant to 28 U.S.C. § 2255, and should deny defendant a certificate of

appealability.

II.     REPORT:

A.    *Procedural Background*

Defendant/movant Gwendolyn Washington is a federal prisoner, currently incarcerated at the Federal Prison Camp in Alderson, West Virginia. Defendant is serving several sentences imposed following her guilty plea convictions in this Court in three separate cases.

1.     *Case No. 10-20202*

In Case No. 10-20202 (the "20202 case"), defendant was charged in a multi-count, multi-defendant Superceding Indictment filed in this Court on October 27, 2010. In Count Four, defendant was charged with conspiracy to obtain by fraud and to unlawful convert to personal use property of the Detroit Public Schools valued at $5,000 or more, in violation of 18 U.S.C. §§ 666(a)(1), 371. The basic facts underlying the charges are set forth in the parties' Rule 11 Plea Agreement:

> [B]etween some time in December, 2005, up to and including September, 2006, in the Eastern District of Michigan and elsewhere, two or more people conspired to fraudulently obtain more than $5,000 in United States currency from the Detroit Public Schools system ("DPS"), an entity which received over $10,000 in federal funding during the year in question. Defendant Gwendolyn Washington knowingly and voluntarily joined this unlawful agreement, aware of its purpose and intending to further it.
>
> In furtherance of this conspiracy, Defendant Washington and others doing business as "Associates for Learning" participated in a wellness program for DPS after receiving the opportunity without DPS having utilized any competitive bidding process or entering into any written contract. Defendant Washington and others agreed to the submission of three grossly inflated and fraudulent invoices, each for approximately $1,000,000, to DPS for services ostensibly rendered in furtherance of the wellness program.
>
> As part of this conspiracy, a DPS agent authorized wire transfers to Defendant Gwendolyn Washington and co-conspirators, doing business as "Associates for Learning," totaling approximately $3.3 million. In furtherance of this conspiracy, a kickback was paid, by Defendant Gwendolyn [Washington] and others, to Stephen Hill, an agent of DPS, in the amount of 5%. In furtherance of this conspiracy, on September 12, 2006 Co-Defendant Stephen Hill deposited $13,825.00 in cash kickbacks into his personal credit union account.

Rule 11 Plea Agreement (10-20202 case), ¶ 1(C).

On February 24, 2011, the parties entered into a Rule 11 Plea Agreement. Under the

agreement, defendant agreed to plead guilty to the one count charged against her.  *See id.*, ¶ 1(A).

The parties agreed that defendant's Sentencing Guidelines range was 24-30 months, and that a

sentence not to exceed 27 months' imprisonment was appropriate.  *See id.*, ¶¶ 2(B), 3(A).  Defendant

agreed to waive her right to appeal unless the sentence imposed exceeded 27 months, and the

Government agreed to waive its right to appeal unless the sentence was below the agreed upon

guideline range.  *See id.*, ¶ 6.  The Court took defendant's plea on March 7, 2011, and on November

28, 2011, the Court sentenced defendant to a term of 27 months' imprisonment, to run concurrent

to the sentences imposed in Case Nos. 11-20248 and 11-20469.  Defendant was represented by

attorney Anthony Chambers during these proceedings.

       2.     *Case Nos. 11-20248 and 11-20469*

      In Case No. 11-20248 (the "20248 case"), defendant was charged in a two-defendant, multi-

count indictment with various drug offenses.  In Count One, defendant was charged with conspiracy

to possess with intent to distribute and conspiracy to distribute controlled substances, in violation

of 21 U.S.C. § 846.  In Counts Two through Four and Thirty through Thirty-One, defendant was

charged with possession with intent to distribute controlled substances and aiding and abetting the

same, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2.  In Counts Five through Twenty-

Eight, defendant was charged with distribution of a controlled substance, in violation of 21 U.S.C.

§ 841(a)(1).  In Count Twenty-Nine, defendant was charged with distribution of a controlled

substance and aiding and abetting the same, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. §

2.  The factual basis for the charges to which defendant ultimately pleaded guilty are set forth in the

parties' Rule 11 Plea Agreement:

          Dr. Gwendolyn Washington, M.D. was a Family Practice physician, licensed
     by the State of Michigan, and authorized by the United States Drug Enforcement

Administration to prescribe and dispense controlled substances. Dr. Washington maintained her medical practice at 29255 Northwestern Highway, Suite 105, Southfield, Michigan. Virginia Dillard was employed by Dr. Washington at the medical practice and is Dr. Washington's niece. Beginning on or about February 2010, Medicare suspended payments to Dr. Washington which resulted in a drastic reduction in Dr. Washington's business income. Beginning on or about February 2010, Dr. Washington began writing an increased number of prescriptions for Schedule II Controlled Substances such as OxyContin, Opana ER, and Roxicodone. Oxycontin, Opana ER, and Roxicodone are highly addictive pain medications which have a significant "street value" on the illicit market.

From on or about February 2010 until on or about March 2011, in the Eastern District of Michigan, Southern Division, defendants Dr. Washington and Virginia Dillard, together with others known and unknown, did knowingly, intentionally and unlawfully combine, conspire, confederate and agree to commit offenses against the United States, that is to possess with the intent to distribute and to distribute, outside the course of professional practice and for no legitimate medical purpose, Schedule II controlled substances, specifically: (1) a mixture or substance containing a detectable amount of oxycodone (OxyContin); (2) a mixture or substance containing a detectable amount of oxymorphone (Opana ER); and (3) a mixture or substance containing a detectable amount of Oxycodone Hydrochloride (Roxicodone).

Specifically, from on or about February 2010 until on or about March 2011, Dr. Washington prescribed tens of thousands of dosage units of OxyContin, Opana ER, and Roxicodone. Dr. Washington wrote prescriptions either in the name of her patients or individuals who were not her patients, without an examination or determination of medical necessity and without an appropriate diagnosis or entry in a patient chart. Dr. Washington then provided these illegal prescriptions to Virginia Dillard. Virginia Dillard presented and filled the prescriptions at various pharmacies in Highland Park, Warren, and Detroit, and elsewhere within the Eastern District of Michigan, Southern Division. After filling the illegal prescriptions, Virginia Dillard delivered the controlled substances to persons both known and unknown to the grand jury, including to prescription drug dealers in exchange for money. Dillard sold each filled prescription in amounts ranging from $1,000 to $2,200. Dillard shared the proceeds with Dr. Washington.

Prior to or on about February 7, 2011, Dr. Washington wrote one prescription of 60 pills of 40 mg Opana ER (oxymorphone), a Schedule II Controlled Substance, for MT, BM and EA (3 total prescriptions), without medical justification. On or about February 7, 2011, Virginia Dillard filled the 3 prescriptions at Pickens Pharmacy in Detroit, MI. The substances were in fact Opana ER (oxymorphone). After picking up the filled prescriptions, Virginia Dillard knowingly and intentionally distributed the Opana ER to an individual(s) located on Gilchrist Street in Detroit, Michigan. Virginia Dillard, thereafter, shared the proceeds of the sale of the controlled substances with Dr. Washington. In writing these prescriptions without medical justification knowing that they would be filled and distributed by Virginia Dillard to other individuals for profit and not to the patients in whose names

4

the prescriptions were written, Dr. Washington knowingly and unlawfully aided and abetted Virginia Dillard in the distribution of Schedule II controlled substances.

Rule 11 Plea Agreement (11-20248 case), ¶ 1(C).

Defendant was charged separately in a two count Information filed on July 27, 2011. In Count One of the Information, defendant was charged with health care fraud, in violation of 18 U.S.C. § 1347. In Count Two, defendant was charged with soliciting and receiving payment in violation of the health care anti-kickback statute, 42 U.S.C. § 1320a-7b(b)(1)(A). The factual basis underlying these charges is likewise summarized in the parties' Rule 11 Plea Agreement:

Beginning at or about 2004 and continuing through on or about April of 2010, the Defendant, Dr. Gwendolyn Washington, in connection with the delivery of and payment for health care benefits, items, and services, did knowingly and willfully execute, and attempt to execute, a scheme and artifice to defraud a health care benefit program affecting commerce, as defined in Title 18, United States Code, Section 24(b), that is, Medicare, and to obtain, by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of Medicare, in connection with the delivery of an payment for health care benefits, items, and services.

Specifically, Washington directed staff in her office to schedule patients for unnecessary ultrasounds, nuclear cardiac stress tests, balance tests, sleep tests, and nerve conduction tests. Patients were called and urged to return to Washington's office every few months for repeat tests even though the initial results were normal or otherwise required no follow-up. Many of the patients were picked up in a van operated by the practice and transported to Dr. Washington's medical office. Many of the patients remained at the office for substantial periods of time and were given food and drink while waiting for their testing. Washington falsified patient symptoms in the medical charts to provide justification for billing Medicare for these tests or provided no justification. Some of these tests were potentially harmful to patients, particularly the nuclear stress tests, which involves the intravenous injection into the patient of a radionuclide, which is a chemical element that radioactively decays, resulting in the emission of nuclear radiation. In total, Dr. Washington received approximately $2,200,000 in payments from Medicare for unnecessary ultrasounds, nuclear cardiac stress tests, balance tests, sleep tests, and nerve conduction tests for approximately 193 patients.

On or about 2004 through on or about March, 2010 in the Eastern District of Michigan, the defendant, Dr. Gwendolyn Washington, did willfully and knowingly solicit and receive renumerations, including kickbacks, directly and indirectly, overtly and covertly, in cash and in kind, from numerous home health care agencies

and diagnostic testing facilities in return for referring patients, including Medicare patients, for the furnishing of services for which payment may be made in whole or in part under the Medicare Program. Specifically, Dr. Washington referred a large number of her patient population to home health agencies, falsely certifying them as being confined to the home, in return for payments from several home health care agencies of between $200 and $500 per patient. More than half of the patients Dr. Washington referred to home health were unnecessarily re-enrolled repeatedly into home health. For each re-enrollment, which required another certification by Dr. Washington, she received another payment.

   In total, Dr. Washington received at least $350,000 in total kickback payments from one imaging company and several home health care agencies. Following the kickbacks to Dr. Washington from the imaging company, Medicare paid approximately $1.2 million to the imaging company. Following the kickbacks to Dr. Washington from the home health agencies, the home health agencies received approximately $1.6 million in payments from Medicare. Dr. Washington also received approximately $250,000 directly from Medicare for certifications of patients for home health services and for her alleged supervision of home health care provided to these patients.

Rule 11 Plea Agreement (11-20248 case), ¶ 1(C).

   On July 28, 2011, the parties entered into a combined Rule 11 Plea Agreement in the 20248 and 20469 cases. Defendant agreed to plead guilty to Counts One (conspiracy) and Twenty-Nine (possession with intent to distribute) in the 20248 case, and to both counts charged in the 20469 case, in exchange for dismissal of the remaining charges in the 20248 case. *See id.*, ¶ 1(A). The parties agreed that the applicable guideline range was 135-168 months, but that if the Court found that defendant's criminal history category was higher than agreed upon by the parties or that the offense level should be higher because defendant demonstrated a lack of acceptance of responsibility or obstructed justice, then the higher guideline range resulting from these findings would be the agreed-upon range. The parties also agreed that the sentence would be capped at the midpoint of the applicable guideline range, and that the sentence would run concurrent with the sentence in the 20202 case. *See id.*, ¶ 2(A). Defendant waived her right to appeal her convictions and any sentence within the maximum allowed by the plea agreement, and the Government waived its right to appeal

any sentence imposed within the applicable guideline range. *See id.*, ¶ 7. Defendant entered her plea on the same date, and on November 28, 2011, the Court sentenced defendant to two terms of 37 months' imprisonment on the charges in the 20469 case, and a total term of 120 months' imprisonment (a 108 month term and a consecutive 12 month term) in the 20248 case, all concurrent with each other and with the sentences in the 20202 case, which were imposed on the same date.

        3.     *The Pending Motions to Vacate*

Pending before the Court are three motions to vacate filed by defendant, one with respect to each case. Although it is at times difficult to decipher the specific claims defendant makes with respect to each individual case, she generally alleges that her counsel rendered constitutionally ineffective assistance. More specifically, defendant contends that counsel was ineffective for: (1) inaccurately advising her regarding the expected sentence in the 20202 case; (2) failing to conduct an adequate pretrial investigation; (3) object to the prosecutor's failure to abide by a promise to dismiss the health care fraud charges if she pleaded guilty in the other two cases; and (4) consult with her about her desire to take an appeal. The Government has filed responses to the motions, and defendant has filed various replies.

B.    *Legal Standard*

The substantive provisions of § 2255, which were not altered by the Antiterrorism and Effective Death Penalty Act of 1996, provide that a federal prisoner "claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States . . . may move the court which imposed the sentence to vacate, set aside, or correct the sentence." 28 U.S.C. § 2255 para. 1. Thus, a defendant may be entitled to § 2255 relief if his conviction or sentence violates either the Constitution or a federal statute. Here, all of defendant's

claims assert that counsel rendered constitutionally inadequate assistance in connection with her pleas.

The Sixth Amendment right to counsel and the right to effective assistance of counsel protect the fundamental right to a fair trial. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). To establish the ineffective assistance of counsel, petitioner must show that: (1) counsel's errors were so serious that "counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment;" and (2) counsel's deficient performance prejudiced the defense. *Id*. at 687. These two components are mixed questions of law and fact. *Id*. at 698. Further, "[t]here is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one." *Id.* at 697. If "it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." *Id.* With respect to the performance prong of the *Strickland* test, a strong presumption exists that counsel's behavior lies within the wide range of reasonable professional assistance. *See id*. at 689; *see also O'Hara v. Wigginton*, 24 F.3d 823, 828 (6th Cir. 1994). "[D]efendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689 (citation omitted). "[T]he court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id*. at 690. With respect to the prejudice prong, the reviewing court must determine, based on the totality of the evidence before the factfinder, "whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Id*. at 695. It is petitioner's burden to establish the elements of his ineffective assistance of counsel claim. *See United States v. Pierce*, 63 F.3d 818,

833 (6th Cir. 1995) (petitioner bears the burden of establishing counsel's ineffectiveness); *Lewis v. Alexander*, 11 F.3d 1349, 1352 (6th Cir. 1993) (same).

As the Supreme Court has recently explained, *Strickland* establishes a high burden that is difficult to meet:

> "Surmounting Strickland's high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. ----, ----, 130 S.Ct. 1473, 1485, 176 L.Ed.2d 284 (2010). An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the Strickland standard must be applied with scrupulous care, lest "intrusive post-trial inquiry" threaten the integrity of the very adversary process the right to counsel is meant to serve. *Strickland*, 466 U.S., at 689-690, 104 S.Ct. 2052. Even under *de novo* review, the standard for judging counsel's representation is a most deferential one. Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge. It is "all too tempting" to "second-guess counsel's assistance after conviction or adverse sentence." *Id*., at 689, 104 S.Ct. 2052; *see also Bell v. Cone*, 535 U.S. 685, 702, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002); *Lockhart v. Fretwell*, 506 U.S. 364, 372, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993). The question is whether an attorney's representation amounted to incompetence under "prevailing professional norms," not whether it deviated from best practices or most common custom. *Strickland*, 466 U.S., at 690, 104 S.Ct. 2052.

*Harrington v. Richter*, 131 S. Ct. 770, 788 (2011).

The Sixth Amendment right to counsel extends to the plea bargaining process, and thus "[d]uring plea negotiations defendants are 'entitled to the effective assistance of competent counsel.'" *Lafler v. Cooper*, 132 S. Ct. 1376, 1384 (2012) (quoting *McMann v. Richardson*, 397 U.S. 759, 771 (1970)) "'[T]he two-part *Strickland v. Washington* test applies to challenges to guilty pleas based on ineffective assistance of counsel.'" *Id*. (quoting *Hill v. Lockhart*, 474 U.S. 52, 58 (1985)); *see also*, *Missouri v. Frye*, 132 U.S. 1399, 1406 (2012). However, the *Strickland* standard is particularly rigorous in the plea bargaining context. Because "[p]lea bargains are the result of complex negotiations suffused with uncertainty . . . [in which] defense attorneys must make careful

strategic choices in balancing opportunities and risks," "strict adherence to the *Strickland* standard [is] all the more essential when reviewing the choices an attorney made at the plea bargain stage." *Premo v. Moore*, 131 S. Ct. 733, 741 (2011).  Further, to demonstrate prejudice as a result of counsel's performance with respect to the entry of a guilty plea, petitioner must "demonstrate 'a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.'" *Id*. at 743 (quoting *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)).

C.      *Analysis*

1.      *Pretrial Investigation*

In her amended point of authorities filed in the 20202 case, defendant suggests that counsel failed to meet with her sufficiently prior to her plea and failed to conduct an adequate pretrial investigation.  However, defendant provides no detail as to what investigation counsel should have conducted or what evidence such an investigation would have uncovered.  It is defendant's burden to establish the elements of her ineffective assistance of counsel claim.  *See United States v. Pierce*, 63 F.3d 818, 833 (6th Cir. 1995) (petitioner bears the burden of establishing counsel's ineffectiveness); *Lewis v. Alexander*, 11 F.3d 1349, 1352 (6th Cir. 1993) (same).  Thus, "a petition for habeas corpus relief based on counsel's failure to call witnesses must present this evidence in the form of the actual testimony by the witness or affidavits."  *United States ex rel. Townsend v. Young*, No. 01 C 0800, 2001 WL 910387, at *5 (N.D. Ill. Aug. 8, 2001) (citing *United States v. Ashimi*, 932 F.2d 643, 650 (7th Cir. 1991)); *see also*, *Pittman v. Florida*, No. 8:05-cv-1700, 2008 WL 2414027, at *12 (M.D. Fla. June 11, 2008).  Similarly, "[a] defendant who alleges a failure to investigate on the part of his counsel must allege with specificity what the investigation would have revealed and how it would have altered the outcome of the trial."  *United States v. Green*, 882 F.2d

999, 1003 (5th Cir. 1989). Here, petitioner has provided no allegation, much less evidence, showing that further investigation by counsel could have uncovered evidence that would have affected her decision to plead guilty. Further, "brevity of time spent in consultation, without more, does not establish that counsel was ineffective." *Easter v. Estelle*, 609 F.2d 756, 759 (5th Cir. 1980). Nor is there any "case establishing a minimum number of meetings between counsel and client prior to trial necessary to prepare an attorney to provide effective assistance of counsel." *United States v. Olson*, 846 F.2d 1103, 1108 (7th Cir. 1988) (internal quotation omitted). Absent specific allegations establishing both that the time counsel spent with defendant was inadequate and that defendant was prejudiced by counsel's inadequate consultation, defendant is not entitled to relief. *See Neal v. Acevedo*, 114 F.3d 803, 806 (8th Cir. 1997); *United States v. Soto-Alvarez*, 958 F.2d 473, 478 (1st Cir. 1992); *United States v. Mealy*, 851 F.2d 890, 908 (7th Cir. 1988); *Adanandus v. Johnson*, 947 F. Supp. 1021, 1095 n.17 (W.D. Tex. 1996); *United States v. Wright*, 845 F. Supp. 1041, 1072 (D.N.J. 1994). Accordingly, the Court should conclude that defendant is not entitled to relief with respect to this claim.

      2.    *Advice Regarding Sentencing*

Defendant next contends that counsel was ineffective for advising her that she would receive a downward departure at sentencing based on her cooperation with the government. Defendant's claim is belied by her trial counsel, who avers in an affidavit provided by the Government that:

> 4.    Dr. Washington attempted to cooperate with the investigation. Either I, or my co-counsel Mr. Crawford, was always present with Dr. Washington during the interviews with law enforcement and the U.S. Attorney's Office. Prior to the meetings, I spoke with her privately and attempted to help her convey her information efficiently. I told her she must tell the whole truth with regard to the information she provided. From the outset, she indicated that she did not wish to provide information regarding her sister, Sherri Washington.

     5.     I advised her that the government would review the information she provided and that the interviewing agents would attempt to verify the information and determine whether or not it was truthful and helpful.

     6.     Neither I nor my co-counsel, Mr. Crawford, promised Dr. Washington that she would receive a dismissal of any charges or a reduction of her sentence. At all times, we discussed only that she would attempt to cooperate.

     7.     Dr. Washington was advised by me that whether or not she provided substantial assistance would be determined by the U.S. Attorney's office. She was advised that it is in the discretion of the U.S. Attorney's Office alone to determine if substantial assistance occurred. I further advised her that substantial assistance required truthful information that assisted in the investigation or prosecution of others.

     8.     The government did not ever promise me, my co-counsel, or Dr. Washington that charges would be dismissed or promise any specific reduction in her sentence. To the contrary, I advised Dr. Washington that the information she provided was insufficient and that she was not believable during her debriefings. She was specifically told that a decision not to reduce her sentence was made by the government.

Gov't's Response in Case No. 11-20248 (docket #60), Ex. 4, Aff. of Anthony Chambers, ¶¶ 4-8 [hereinafter "Chambers Aff."].

Further, defendant's claim is belied by the record of her plea. The Rule 11 Plea Agreement states that "[t]here are no sentencing guideline disputes," and that the parties agreed that "defendant's guideline range is 135-168 months, as set forth on the attached worksheets." Rule 11 Plea Agreement (20248/20469 cases), ¶ 2(B). Worksheet E, attached to the Agreement, provides a space for the parties to identify "any applicable aggravating or mitigating circumstance that might support a term of imprisonment above or below the applicable guideline range" under Chapter 5, parts H & K, of the Sentencing Guidelines, which includes the provision for a substantial assistance departure (U.S.S.G. § 5K1.1); this space is blank on the worksheet. *See* Rule 11 Plea Agreement, Worksheet E, ¶ 10. The Agreement itself provides that it "is the complete agreement between the

12

parties," and that "no oral or written promises made by the government to defendant or to the attorney for the defendant at any time before defendant pleads guilty are binding except to the extent they have been explicitly incorporated into this agreement." Rule 11 Plea Agreement, ¶ 10.  At the plea hearing, defendant denied that the Court, the prosecutor, or defense counsel had made any promises regarding her sentence other than what was reflected in the plea agreement.  *See* Plea Tr., dated 7/28/11, at 20.

As the Supreme Court has explained:

Questions like these cannot be answered with certitude; yet a decision to plead guilty must necessarily rest upon counsel's answers, uncertain as they may be.  Waiving trial entails the inherent risk that the good-faith evaluations of a reasonably competent attorney will turn out to be mistaken either as to the facts or as to what a court's judgment might be on given facts.
That a guilty plea must be intelligently made is not a requirement that all advice offered by the defendant's lawyer withstand retrospective examination in a post-conviction hearing.

*McMann v. Richardson*, 397 U.S. 759, 770 (1970).  Thus, counsel's allegedly erroneous advice regarding defendant's likely sentence does not provide a basis for habeas relief.  *See Barker v. United States*, 7 F.3d 629, 633 (7th Cir. 1993).  Further, even if counsel in fact erroneously advised defendant that she would receive a downward departure, the plea agreement and the Court's colloquy fully explained the sentence defendant could expect by pleading guilty.  Thus, any prejudicial effect of trial counsel's erroneous advice was cured by the information provided at the plea hearing, and defendant's plea was not involuntary because of counsel's allegedly erroneous advice.  *See Christy v. Lafler*, No. 05-CV-74390-DT, 2007 WL 1648921, at *5 (E.D. Mich. June 6, 2007) (Cleland, J.); *Owczarczak v. Bock*, No. 01-10031-BC, 2004 WL 192414, at *5 (E.D. Mich. Sept. 26, 2004) (Lawson, J.); *cf. Ventura v. Meachum*, 957 F.2d 1048, 1058 (2d Cir. 1992) (internal quotation omitted) (plea not rendered involuntary by counsel's erroneous advice regarding

13

sentencing where trial court's plea colloquy "apprised [the petitioner] of the actual sentencing possibilities.").

Defendant also argues, in connection with sentencing, that counsel was ineffective for failing to challenge the scoring of the sentencing guidelines. However, defendant agreed to the guidelines scoring as part of her Rule 11 Plea Agreements. Because defendant agreed to the scoring of the guidelines, counsel was not ineffective in failing to object to that scoring at sentencing. *See Dorie v. Phillips*, No. 1:07–cv–1195, 2010 WL 1258234, at *7 (W.D. Mich. Mar. 8, 2010) (where petitioner agreed to applicable guideline range as part of plea agreement, counsel was not ineffective in failing to object to scoring of the guidelines), *magistrate judge's report adopted*, 2010 WL 1258233 (W.D. Mich. Mar. 30, 2010). Accordingly, the Court should conclude that defendant is not entitled to relief on her sentencing related ineffective assistance of counsel claims.

3.    *Failure to Obtain Dismissal of Health Care Fraud Charges*

Defendant next contends that counsel was ineffective in failing to hold the Government to its agreement to dismiss the health care fraud charges in the 20469 case if she cooperated. Defendant, however, cannot show that any such agreement existed. Both the Government in its response and defense counsel in his affidavit deny that any such agreement existed. No such agreement is set forth in either Rule 11 agreement that defendant entered, both of which state that they are the complete agreements between the parties. No such agreement was set forth at the plea colloquy, and defendant explicitly denied that any promises or deals had been made that were not included in the plea agreements. These statements by defendant carry a strong presumption of veracity. *See Blackledge v. Allison*, 431 U.S. 63, 74 (1977) ("Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations

14

unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible."). Because defendant cannot show that any agreement to dismiss the health care fraud charges actually existed, she cannot show that counsel was ineffective.[1]

4.    *Failure to Consult about Appeal*

Finally, defendant contends that counsel was ineffective for failing to advise her about her right to appeal. As an initial matter, I note that defendant's claim is contradicted by her counsel, who avers that notwithstanding the appeal waiver he discussed an appeal with defendant and advised her that he would file a notice of appeal if she wanted to do so. Neither defendant nor her family expressed any interest in filing an appeal. *See* Chambers Aff., ¶ 14. In any event, even if counsel in fact did not consult with defendant regarding an appeal, defendant cannot show that counsel was ineffective.

Where a defendant claims that counsel failed to file an appeal, the performance inquiry depends both on what defendant told counsel and on the circumstances of the case. In *Roe v. Flores-Ortega*, 528 U.S. 470 (2000), the Court explained that "a lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable." *Id.* at 477. Conversely, "a defendant who explicitly tells his attorney *not* to file an appeal plainly cannot later complain that, by following his instructions, his counsel performed deficiently." *Id.* In the middle ground–that is, in cases in which "the defendant has not clearly conveyed his wishes

---

[1]At some points in her various pleadings, defendant suggests that the agreement was that the charges in the 20202 case (relating to fraud and conspiracy with respect to the Detroit Public Schools) would be dismissed if she cooperated in the other two cases. As with her claim that the health care fraud charges would be dismissed, there is simply no evidence to support this assertion. Further, at the time defendant and her attorney discussed cooperation in the 20248 and 20469 cases, defendant had already entered her guilty plea in the 20202 case, rendering any agreement to dismiss the charges in that case nonsensical.

one way or the other," *id*.–the Court explained that

> the question whether counsel has performed deficiently by not filing a notice of appeal is best answered by first asking a separate, but antecedent, question: whether counsel in fact consulted with the defendant about an appeal. We employ the term "consult" to convey a specific meaning-advising the defendant about the advantages and disadvantages of taking an appeal, and making a reasonable effort to discover the defendant's wishes. If counsel has consulted with the defendant, the question of deficient performance is easily answered: Counsel performs in a professionally unreasonable manner only by failing to follow the defendant's express instructions with respect to an appeal. If counsel has not consulted with the defendant, the court must in turn ask a second, and subsidiary, question: whether counsel's failure to consult with the defendant itself constitutes deficient performance.

*Id*. at 478.  The Court further explained that although counsel should ordinarily directly consult a defendant about an appeal, "we cannot say, as a *constitutional* matter, that in every case counsel's failure to consult with the defendant about an appeal is necessarily unreasonable, and therefore deficient."  *Id*. at 479.  Rather, the Court held "that counsel has a constitutionally imposed duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing."  *Id*. at 480.

With respect to prejudice, the defendant need not show prejudice in the sense of having a potentially meritorious appellate claim, *see id*. at 486.  However, he must still show prejudice in the sense that "counsel's deficient performance . . . actually cause[d] the forfeiture of the defendant's appeal."  *Id*. at 484.  "If the defendant cannot demonstrate that, but for counsel's deficient performance, he would [not have lost his appeal], counsel's deficient performance has not deprived him of anything, and he is not entitled to relief."  As the Court observed, under this standard "the prejudice inquiry . . . is not wholly dissimilar from the inquiry used to determine whether counsel

16

performed deficiently in the first place." *Id*. at 486.

Here, even assuming that counsel failed to consult defendant regarding an appeal, she cannot show that his failure to do so amounted to ineffective assistance of counsel. In each case, the Rule 11 Plea Agreement contained an explicit waiver of appeal provision, prohibiting defendant from appealing unless her sentence exceeded that permitted by the Agreement. *See* Rule 11 Plea Agreement (20202 case), ¶ 6; Rule 11 Plea Agreement (20248/20469 cases), ¶ 7. This agreement was fully explained to defendant at the plea colloquy, and defendant indicated that she understood the appeal waiver provision. *See* Plea Tr., dated 7/28/11, at 15. In neither case did defendant's sentence exceed the agreed-upon sentence. As the Court explained in *Roe*, "a highly relevant factor" in determining whether counsel was ineffective

> will be whether the conviction follows a trial or a guilty plea, both because a guilty plea reduces the scope of potentially appealable issues and because such a plea may indicate that the defendant seeks an end to judicial proceedings. Even in cases when the defendant pleads guilty, the court must consider such factors as whether the defendant received the sentence bargained for as part of the plea and whether the plea expressly reserved or waived some or all appeal rights. Only by considering all relevant factors in a given case can a court properly determine whether a . . . particular defendant sufficiently demonstrated to counsel an interest in an appeal.

*Flores-Ortega*, 528 U.S. at 480. Defendant does not contend that she actually expressed any interest in filing an appeal. Nor would counsel have had any reason to conclude that a rational defendant in in defendant's position would have desire an appeal. Defendant received a favorable plea deal in three separate cases alleging multiple charges, and was actually sentenced below the agreed-upon sentencing range in the 20248 and 20469 cases. Defendant also validly waived her right to appeal, and she has identified no nonfrivolous grounds upon which an appeal could have been based. Indeed, where as here a defendant has entered into a valid appellate waiver, "counsel's duty to protect his or her client's interest militates against filing an appeal which could cost the client the

17

benefit of the plea bargain against his or her best interest." *United States v. Mabry*, 536 F.3d 231, 240 (3d Cir. 2008) (internal quotation omitted); *see also*, *Nunez v. United States*, 546 F.3d 450, 455 (7th Cir. 2008). Because there were no non-frivolous bases for an appeal and defendant expressly waived her right to appeal, counsel was not ineffective for failing to consult with defendant regarding an appeal. *See Shelton v. United States*, 378 Fed. Appx. 536, 539 (6th Cir. 2010); *United States v. Matthews*, 384 Fed. Appx. 214, 218 (4th Cir. 2010); *Jackson v. Attorney Gen. of Nev.*, 268 Fed. Appx. 615, 620 (9th Cir. 2008). Accordingly, the Court should conclude that defendant is not entitled to relief on this claim.

D.      *Recommendation Regarding Certificate of Appealability*

        1.      *Legal Standard*

        As amended by the Antiterrorism and Effective Death Penalty Act, section 2253 provides that a defendant may not appeal a denial of motion to vacate unless a judge issues a certificate of appealability. *See* 28 U.S.C. § 2253(c)(1). The statute further provides that "[a] certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). As the Sixth Circuit has noted, this language represents a codification of the Supreme Court's decision in *Barefoot v. Estelle*, 463 U.S. 880 (1983), and "[t]he AEDPA thus makes no change to the general showing required to obtain a certificate[.]" *Lyons v. Ohio Adult Parole Auth.*, 105 F.3d 1063, 1073 (6th Cir. 1997); *accord Slack v. McDaniel*, 529 U.S. 473, 483 (2000). Although the statute does not define what constitutes a "substantial showing" of a denial of a constitutional right, the burden on the movant is obviously less than the burden for establishing entitlement to the writ; otherwise, a certificate could never issue. Rather, the courts that have considered the issue have concluded that "'[a] substantial

18

showing requires the applicant to "demonstrate that the issues are debatable among jurists of reason; that a court could resolve the issues (in a different manner); or that the questions are adequate to deserve encouragement to proceed further."'" *Hicks v. Johnson*, 186 F.3d 634, 636 (5th Cir. 1999) (quoting *Drinkard v. Johnson*, 97 F.3d 751, 755 (5th Cir. 1996) (quoting *Barefoot*, 463 U.S. at 893 n.4)); *accord Slack*, 529 U.S. at 483-84.  Although the substantive standard is the same, "[t]he new Act does, however, require that certificates of appealability, unlike the former certificates of probable cause, specify which issues are appealable."  *Lyons*, 105 F.3d at 1073. (citing 28 U.S.C. § 2253(c)(3)).

Effective December 1, 2009, the newly created Rule 11 of the Rules Governing Section 2255 Proceedings for the United States District Courts, 28 U.S.C. foll. § 2255, provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  Rule 11(a), 28 U.S.C. foll. § 2254.  The rule tracks § 2253(c)(3)'s requirement that any grant of a certificate of appealability "state the specific issue or issues that satisfy the showing required by § 2253(c)(2)," Rule 11(a), but omits the requirement contained in the pre-amendment version of Federal Rule of Appellate Procedure 22(b)(1) that the court explain "why a certificate should not issue."  FED. R. APP. P. 22(b)(1) (version effective prior to 2009 amendment); *see id*., advisory committee note, 2009 amendments.  In light of the new Rule 11 requirement that the Court either grant or deny the certificate of appealability at the time of its final adverse order, I include a recommendation regarding the certificate of appealability issue here.

2.    *Analysis*

Here, if the Court accepts my recommendation regarding the merits of defendant's claims, the Court should also conclude that defendant is not entitled to a certificate of appealability.

19

Defendant has pointed to no prejudice arising from counsel's alleged failure to conduct an adequate pretrial investigation, and thus the resolution of this ineffective assistance claim is not reasonably debatable. Further, there is no support in the record for defendant's claim that she was promised a substantial assistance departure or dismissal of any additional charges, and her contention to the contrary is belief by the Rule 11 Plea Agreements and her statements at the plea colloquy. Further, because defendant agreed to the guidelines calculations as part of the Agreements, there was no basis for counsel to challenge those calculations. Thus the resolution of these ineffective assistance claims is not reasonably debatable. Finally, because defendant did not instruct counsel to file an appeal, there were no non-frivolous grounds for appeal, and defendant expressly waived her right to appeal, the conclusion that counsel was not deficient in failing to consult about an appeal is not reasonably debatable. Accordingly, the Court should deny defendant a certificate of appealability.

E.    *Conclusion*

In view of the foregoing, the Court should conclude that defendant has not established her entitlement to relief under § 2255. Accordingly, the Court should deny defendant's motions to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. If the Court accepts this recommendation, the Court should also deny defendant a certificate of appealability.

III.    NOTICE TO PARTIES REGARDING OBJECTIONS:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in FED. R. CIV. P. 72(b). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which

raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Federation of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court.  The response shall address specifically, and in the same order raised, each issue contained within the objections.


_____s/ Paul J. Komives_____
PAUL J. KOMIVES
UNITED STATES MAGISTRATE JUDGE

Dated: _____9/5/13_____

CERTIFICATION OF SERVICE

I hereby certify that a copy of this Order was mailed to defendant Washington and Counsel of Record  on September 5, 2013.


___s/  Carol J. Bethel_____
Case Manager